IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUDREY THOMPSON, | |
| Plaintiff, | **8:25CV283** |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security,[1] | **MEMORANDUM AND ORDER** |
| Defendant. | |

Plaintiff Audrey Thompson ("Thompson") seeks judicial review of the final decision of defendant Frank Bisignano, Commissioner of Social Security ("Commissioner"), denying her claims for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Now before the Court are Thompson's Motion for an Order Reversing the Commissioner's Decision (Filing No. 10) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 14). For the reasons stated below, the Court affirms the Commissioner's denial of benefits.

## I.    BACKGROUND

Born in 1975, Thompson has a high school education. Just 45 years old on her alleged disability onset date of June 16, 2020, she has performed past relevant work as a telephone support worker for Marriott International. That job was eliminated for reasons unrelated to her physical impairments around the time of the alleged onset date.

---

[1]Frank Bisignano, Commissioner of the Social Security Administration, is automatically substituted for his predecessor under Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to update the docket sheet accordingly.

On August 23, 2021, Thompson protectively filed for federal disability benefits and disability insurance benefits.  She also protectively filed a Title XVI application for supplemental security income on September 1, 2022.  She alleged she was unable to work because of degenerative disk disease, fibromyalgia, chronic fatigue syndrome, obesity, and her thyroidectomy from 2020 (Filing No. 7-4).  On reconsideration, she also reported issues with fibromyalgia flares resulting in pain in her wrists and hands and a decreased ability to concentrate as well as tremors in her right arm and leg causing back and neck pain (Filing No. 7-4).  The Social Security Administration ("SSA") denied her claims initially and on reconsideration.

Thompson requested a hearing on June 14, 2023.  On December 11, 2023, an SSA administrative law judge ("ALJ") held an online video hearing.  Thompson participated in the hearing with one of her attorneys.  A vocational expert participated by phone.

At the hearing, Thompson explained she had pain in her lower back that radiated down her hips and legs and impacted her ability to sit, stand, and walk.  She also discussed her knee pain and left shoulder pain which limited overhead reaching.  On top of her physical ailments, Thompson told the ALJ about her memory issues, anxiety, and post-traumatic stress disorder.

On March 5, 2024, the ALJ denied Thompson's claims, concluding she was not disabled under the Act.  On February 19, 2025, the Appeals Council denied review, making the ALJ's hearing decision the Commissioner's final decision in this case.  *See*, *e.g.*, *Combs v. Berryhill*, 878 F.3d 642, 645 (8th Cir. 2017).

Thompson now seeks review of that decision.  *See* 42 U.S.C. § 405(g); *Smith v. Berryhill*, 587 U.S. 471, 478, 480-81 (2019).  As she sees it, the ALJ failed to fully develop the record on several points and his decision is not supported by substantial evidence.  In particular, she faults the ALJ for failing to (1) explain in detail whether Thompson "met or medically equaled Listing 1.18"; (2) consider whether Thompson was due at least a closed

period of benefits; and (3) failing to fully and fairly develop the record concerning Thompson's need for a walker, sitting limitations, and mental limitations.

## II.    DISCUSSION

### A.    Standard of Review

Under § 405(g), a claimant unhappy with the Commissioner's decision can seek judicial review of the final decision in federal court. *See Smith*, 587 U.S. at 476. In conducting that review, the Court does "not reweigh the evidence," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003), or retry the issues de novo, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). The Court must affirm "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). Despite that imposing label, "substantial evidence" is not a high bar. *See id.* It is "'more than a mere scintilla'" of evidence, *id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), but "less than a preponderance," *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 102.

The Court "will only disturb the ALJ's decision 'if it falls outside the available zone of choice.'" *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Kraus*, 988 F.3d at 1024). A decision does not fall outside the zone merely because the Court "might have reached a different conclusion if" it was in the ALJ's shoes. *Id.*

3

In deciding whether substantial evidence supports the Commissioner's decision, the Court must "consider evidence that both supports" it and evidence that detracts from it. *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023). "If the record supports two inconsistent conclusions, this court must affirm the Commissioner's choice among those two conclusions." *Ross*, 92 F.4th at 778 (quoting *Bagwell v. Comm'r, Soc. Sec. Admin.*, 916 F.3d 1117, 1119 (8th Cir. 2019)).

### B.    Eligibility for Benefits

Thompson must be disabled under the Act to qualify for disability benefits and supplemental security income. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A).

A claimant's disability, not just the impairment must "have existed or be expected to exist for twelve months." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007) (unpublished per curiam) (citing *Barnhart v. Walton*, 535 U.S. 212, 215 (2002)). Thompson is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### C.    The Five-Step Process

"The regulations implementing the Act set forth a five-step, sequential process for determining whether a claimant is under a disability." *Swink v. Saul*, 931 F.3d 765, 769-70 (8th Cir. 2019); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the ALJ ensures the claimant has not engaged in "substantial gainful activity," which would bar her from being considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b). If she

hasn't, the ALJ moves to step two to evaluate "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

At step three, the ALJ "determines based on the medical evidence whether the severe impairments meet or equal the criteria of a 'listed impairment,' which is presumed to be disabling." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has such an impairment that meets the duration requirement, she is considered disabled, regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

On the other hand, if the claimant's impairment is severe but does not meet or equal one of the listed impairments, the ALJ moves to step four to decide whether she retains the residual functional capacity ("RFC")[2] to perform her past relevant work. *See Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). If so, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If not, the burden of production shifts to the Commissioner at step five "to prove that there are other jobs in the national economy that the claimant can perform" given her

---

[2]A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). It is "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). "[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

age, education, and work experience.[3]  *Simmons*, 264 F.3d at 755; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can adjust to other work, she is not disabled; if she cannot and meets the duration requirement, she is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, the ALJ determined Thompson had "not engaged in substantial gainful activity since" her alleged onset date of June 16, 2020.  Turning to step two, the ALJ then determined Thompson had "the following severe impairments: degenerative disc disease of the thoracolumbar and lumbar spine; degenerative joint disease of the left hip; obesity; fibromyalgia; right knee pain; depressive disorder; anxiety disorder; and trauma disorder." He further found evidence of "asthma, diabetes, migraines, chronic fatigue syndrome, Ehlers-Danlos, chronic UTIs, and thyroid issues resulting in thyroid removal."  He also considered Thompson's "four-year history of right leg weakness and jerking movements, along with numbness, tingling, [and] weakness [ ] on the right side."  Although the ALJ found those impairments were not severe because they do not impose more than a minimal limitation on Thompson's ability to perform basic work activities, he did account for them in determining her RFC.

At step three, the ALJ concluded Thompson did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  In particular, he reviewed listings 1.01 *et seq.*, 1.15, 1.16, 1.17, and 1.18.  He also considered how Thompson's obesity and fibromyalgia could impact her relevant symptoms.

In finding Thompson's mental impairments did "not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15," the ALJ considered whether "paragraph B" or "paragraph C" criteria are satisfied.  The ALJ found moderate limitations in

---

[3]"The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

6

(1) "understanding, remembering, or applying information," (2) "interacting with others," and (3) "concentrating, persisting, or maintaining pace." The ALJ found Thompson has a mild limitation in "adapting or managing" herself.

As to "paragraph C," the ALJ decided "the evidence fails to establish the presence of the [those] criteria" because "[t]he record in this case does not contain a medically documented history of the existence of [Thompson's] severe mental impairments over a period of at least two years, with ongoing medical treatment that diminishes the symptoms and a minimal capacity to adopt to changes or demands that are not already part of her daily life."

Based on his "careful consideration of the entire record," the ALJ found Thompson had the RFC to perform sedentary work with some limitations. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). More specifically, he determined she could "perform simple tasks and can exercise proper judgment in performing those tasks" and could "respond appropriately to routine changes in the workplace" while "occasionally interact[ing] with coworkers and supervisors" to perform work that does "not require interaction with the public."

The ALJ found Thompson could—given her age, education, work experience, and RFC—perform other "jobs that exist in significant numbers in the national economy." Such jobs include "table worker," "polisher of eye frames," and "data cable assembler." Taking that into account, the ALJ found Thompson was not disabled under the Act.

### D.      Issues on Review
#### 1.      The ALJ's Evaluation of Thompson's Hip Issues at Step Three

Thompson first argues the ALJ failed to point to specific evidence to support his step-three conclusion that she did not meet or medically equal Listing 1.18. In her view, there is "ample evidence" that she meets or medically equals Listing 1.18 for both hips,

7

especially her left hip.  To meet the listing for abnormality of a major joint, Listing 1.18, Thompson must show:

> A. Chronic joint pain or stiffness.
> AND
> B. Abnormal motion, instability, or immobility of the affected joint(s).
> AND
> C. Anatomical abnormality of the affected joint(s) noted on:
>> 1. Physical examination (for example, subluxation, contracture, or bony or fibrous ankylosis); or
>> 2. Imaging (for example, joint space narrowing, bony destruction, or ankylosis or arthrodesis of the affected joint).
> AND
> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
>> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
>> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.18.  Thompson would have to show that she meets "*all* of the specified medical criteria."  *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (emphasis in original) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Here, the ALJ considered the listing criteria of 1.18—among others—but found that the evidence "fail[ed] to establish an impairment that is accompanied by evidence

reflective of listing level severity." While the ALJ generally referenced Listing 1.18, he did not specifically discuss why its requirements were not met.

"Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion, as it does in this case." *Pepper ex rel. Gardner*, 342 F.3d 853, 855 (8th Cir. 2003); *accord Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) ("An ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion."). Because the ALJ's "overall conclusion is supported by the record," it is not reversible error that the ALJ did not specifically explain why Thompson's hip issues do not equal Listing 1.18. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

Contrary to Thompson's assertions, the record in this case does not support a "documented medical need [ ] for a walker, bilateral canes, or bilateral crutches [ ] or a wheeled and seated mobility device involving the use of both hands." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.18(D). The ALJ specifically addressed Thompson's use of a walker under Listing 1.17 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). He noted that Thompson only occasionally used a walker, and her treating provider noted "her gait was typical for a post-operative patient and that her walker use was due to her back." Moreover, Thompson alleged the walker was prescribed in 2017, but she continued to work a sedentary job from 2017 to 2020 when that job was eliminated. Accordingly, the ALJ found the use of a walker "did not interfere with [Thompson's] ability to engage in substantial gainful activity."

While Thompson identifies facts to support her view that her hip issues could meet or medically equal Listing 1.18, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence [also] exists in the record that would have supported a contrary outcome." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quoting *Cline v. Colvin*, 771 F.3d 1098, 1102

9

(8th Cir. 2014)) (second alteration in original).  Although the Court may "have decided the case differently," *id.*, substantial evidence supports the ALJ's findings.

### 2.      Period of Benefits

Thompson next argues that the ALJ should have considered granting at least a period of disability from her alleged onset date through "some time after her left hip replacement surgery."  This argument is unpersuasive.  Thompson alleged an onset date of June 16, 2020.  She had hip replacement surgery on March 28, 2023.  The record shows the ALJ properly considered this period and discussed evidence from this period.  The issue before the Court is whether substantial evidence supports the ALJ's conclusion, not whether it "would have reached a different conclusion than [the Commissioner]" or whether "substantial evidence supports a contrary conclusion."  *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017), *as corrected* (Apr. 25, 2017).   Despite Thompson's dissatisfaction with the result, it is not this Court's role to "find additional facts," *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086 (8th Cir. 2018), or "reweigh the evidence," *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022).

### 3.      Alleged Need for a Walker and Sitting Limitations

Thompson asserts the ALJ's RFC findings are not supported by substantial evidence because the ALJ failed to fully and fairly develop her need for a walker and the extent of her sitting limitations.  At step four, the "ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).

In this case, the ALJ considered Thompson's alleged need to use a walker.  The ALJ noted Thompson's gait was sometimes abnormal, and she was occasionally seen with a walker.  However, at other appointments, Thompson was observed with a normal gait.  As a result, the ALJ determined Thompson's use of a walker was documented inconsistently.

Thompson also points to the rejected opinion of Jill Conneally, PA-C ("Conneally"), who concluded Thompson's need for a walker was appropriate because she was unsteady without it. Conneally supported her opinion with her own notes but also noted Thompson's gait became better when she was not being observed. The ALJ considered Conneally's opinion, but found it not persuasive, in part, because it was "not consistent with the record." *See Davidson*, 578 F.3d at 842 (explaining that if a treating physician's opinion is inconsistent with other substantial evidence in the record, "the ALJ need not accept it"); *House v. Astrue*, 500 F.3d 741, 744 (8th Cir.2007) ("[W]hile entitled to special weight, [a treating physician's opinion] does not automatically control, particularly if 'the treating physician evidence is itself inconsistent.'")

Regarding Thompson's sitting limitations, she argues the ALJ failed to explain how her ability to do some basic activities amounted to evidence of an ability to the sitting required by sedentary work on a full-time basis. In her view, the ALJ did not explain how he came up with the sedentary sitting limitation in her RFC.

In response, the Commissioner argues that Thompson's suggestion that she had additional functional limitations related to sitting is simply a request to reweigh the evidence, which this Court may not do. *See Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019) (It is not the Court's role "to reweigh the evidence presented to the ALJ or to try the issue in this case de novo"). Moreover, sedentary jobs do not require exclusive sitting. *See* 20 C.F.R. § 404.1567(a) (providing that sedentary work involves a certain amount of "walking and standing" as well as sitting).

The record shows that the ALJ evaluated and properly considered Thompson's need for a walker and sitting limitations when determining her RFC. In concluding Thompson could perform sedentary work, the ALJ considered testimony by the vocational expert and how Thompson was able to attend Cirque du Soleil and the movies. The ALJ specifically discussed Thompson's ability to "lift, squat, bend, stand, reach, walk, *sit*, kneel, talk, climb stairs, see, remember, complete tasks, concentrate, understand, and use her hands." (Filing

11

No. 7-2) (emphasis added). He noted that while Thompson's ability to participate in daily life activities was "not itself conclusive proof that [she] is also able to engage in substantial gainful activity," it is a "strong indication." He considered this evidence together with the other medical findings in the record. Again, "[i]t is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." *Dols*, 931 F.3d at 746. Substantial evidence supports the ALJ's decision.

### 4.    Mental Limitations

Finally, Thompson argues that the mental RFC determined by the ALJ was not supported by substantial evidence because it did not account for the extent of her mental limitations. Specifically, she complains that the ALJ improperly relied on her activities of daily living and the lack of treatment notes in the record from her counselor Paul Davies, Ph.D. ("Dr. Davies").

According to Thompson, she wanted Dr. Davies's treatment notes in the record, but SSA guidance encourages therapists to submit a letter detailing their patient's treatment and functional status as opposed to psychotherapy notes. Thompson argues it was reversible error for the ALJ to consider the lack of mental health treatment notes in the record. In her view, the ALJ should have "ma[de] efforts to obtain these missing treatment notes" (Filing No. 11).

The Commissioner counters that the ALJ was permitted to reach a decision without obtaining additional medical evidence, so long as other evidence in the record provides a sufficient basis for his decision. *See Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

While the ALJ did reference the fact that there were no treatment notes from Dr. Davies, this does not detract from other substantial evidence in the record which supports the ALJ's decision. In referencing Dr. Davies's report that Thompson is "unable to leave her house" the ALJ also noted the report was inconsistent with the overall medical record because "[n]o providers [have] witness[ed] the claimant having panic attacks, and

12

outside of reports at a consultative exam that they occur, she has not mentioned them to her other providers. The claimant details in her journal leaving her house for both errands and pleasure."

Thompson also argues that because two other consultative examiners, Dr. Curran and Dr. Lindner, opined Thompson had limitations which were more limiting that what the ALJ ultimately found, "the ALJ should have obtained a further medical opinion." This argument is unavailing. *See Anderson*, 51 F.3d at 779.

Moreover, there was substantial evidence in the record to support the ALJ's determination regarding Thompson's mental limitations. The ALJ considered Thompson's panic attacks in conjunction with evidence that Thompson left her home to attend medical appointments, run errands, take her children to school, go night fishing, go to the lake and other cities, go to the movies, attend a reunion, and attend Cirque du Soleil. The ALJ did not consider these activities in a vacuum. He also assessed her medical records and the opinions of the state psychological consultants from the initial and reconsideration levels. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (noting that "regular physical activities, particularly when considered in conjunction with the medical record" can support an ALJ's decision).

Upon thorough review of the record as a whole, the Court finds substantial evidence supports the ALJ's decision. *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) ("We do not require that every aspect of an RFC finding 'be supported by a specific medical opinion,' only that it 'be supported by some medical evidence of the claimant's ability to function in the workplace.'" (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). Accordingly,

IT IS ORDERED:

1.    Audrey Thompson's Motion for Order Reversing the Commissioner's Decision (Filing No. 10) is denied.

13

2.      The Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 14) is granted, and his decision to deny benefits is affirmed.

3.      Thompson's Complaint (Filing No. 1) is dismissed with prejudice.

4.      A separate judgment will issue.

Dated this 11th day of June 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

14